IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW MEXICO

MICHAEL COLLIER,

     Plaintiff,

v.                                                              NO. 06-cv-655-WJ/LFG

UNITED STATES OF AMERICA,

     Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the parties' cross-motions for summary judgment. *See* United States of America's Motion for Summary Judgment [Doc. 26]; Michael Collier's First Motion for Summary Judgment [Doc. 27]. Because the Court concludes that: (i) no genuine issues of material fact exist; (ii) Mr. Collier has failed to show that the tax-credit statute he challenges is unconstitutional; and (iii) the challenged statute does not violate the Fair Housing Act, the Court shall grant the United States' motion and deny Mr. Collier's motion.

I.    **Stipulated Facts.**

The parties have submitted the following Joint Stipulation of Facts:

1. Section 42, 26 U.S.C., establishes the Low-Income Housing Tax Credit (Tax Credit) program. The IRS interprets the statute as prohibiting full-time students who do not meet the exceptions in 26 U.S.C. 42 (i)(3)(D) from residing in Tax Credit properties.

2. The New Mexico Mortgage Finance Authority (MFA) interprets 26 U.S.C. Section 42(i)(3)(D) as prohibiting full-time students who do not meet the exceptions in 26 U.S.C. 42 (i)(3)(D) from residing in Tax Credit properties.

3. Section 42 of the Internal Revenue Code (I.R.C.) requires the Mortgage Finance Authority (MFA) to develop and implement a compliance monitoring program. That monitoring program is contained within MFA's Housing Credit Compliance Manual. Sections 4.1 and 4.3 of Chapter 4 of the Compliance Manual set forth MFA's

interpretation that under the Tax Credit student restriction, most households that consist entirely of full-time students are not eligible tenants. The Compliance Manual lists four exceptions to the full-time student restriction. Fulltime student households that are income eligible and satisfy one or more of the following conditions can be considered an eligible tenant:

• All members of the household are full-time students, and such students are married and filing a joint tax return. *(Note: Members of the household do not need to be married to each other.)*
• The household consists of single parent(s) and their children, and such parents and children are not dependents of another individual.
• At least one member of the household receives assistance under Title IV of the Social Security Act (i.e., AFDC [in New Mexico, TANF] assistance).
• At least one member of the household is enrolled in a job-training program receiving assistance under the Job Training Partnership Act, or similar federal, state, or local laws.

4.  On August 22, 2005, Plaintiff Michael Collier entered into a lease agreement with TRK Management (the Lease). The lease term was from August 25, 2005, to August 31, 2006. . . . TRK Management owns the Caballo Peak Apartments.

5.  The Lease disclosed that TRK Management was participating in government regulated affordable housing programs. Paragraph 34 of the lease states, "If tenant becomes a full time student he will no longer be eligible to reside at Caballo Peak Apts."

6.  At the time Collier signed the Lease, he was a part-time student at the New Mexico Institute of Mining and Technology in Socorro, New Mexico (the Institute).

7.  In January 2006, Collier enrolled as a full-time student at the Institute. He was also a full-time student during the fall of 2006.

8.  After TRK Management learned that Collier was enrolled as a full-time student, TRK Management contacted the MFA for guidance regarding Collier's full-time student status and its effect on compliance.

9.  Matthew Archuleta with MFA advised TRK Management to evict Collier in order to maintain compliance with the Tax Credit program.

10. Collier spoke directly to Matt Archuleta of the MFA in April 2006 in a conference call with TRK Management representatives.

11. Matt Archuleta explained to Michael Collier that he must vacate the apartment

2

because he became a full-time student.

12. Paragraph 34 of the Lease was hand-written by Andrea Ettinger of TRK Management because she was aware of Collier's part-time student status and feared noncompliance if his status changed to full-time student.

13. Andrea Ettinger was motivated to write Paragraph 34 because of regulations communicated by the MFA.

14. TRK Management began eviction proceedings against Collier in the Magistrate Court, County of Los Alamos, Docket No. M-33-CV-2006-00030.

15. The Magistrate Court entered a Judgment for Restitution, which is attached as Exhibit 2.  The judgment ordered Collier to pay $665.00 to TRK Management, the lease to be terminated, and the premises to be vacated on or before June 6, 2006.

R. Doc. 17.  There are no genuine issues of material fact.

## II.   Relevant Law.

### A.  Summary judgment standard.

Under Rule 56 of the Federal Rules of Civil Procedure, a court should grant summary judgment if there are no genuine issues of material fact and a party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When, as here, both parties have moved for summary judgment, the Court may "assume that there is no evidence which needs to be considered other than that which has been filed by the parties."  *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981).

### B.  The Low-Income Housing Tax Credit Program.

The Low Income Housing Tax Credit program was enacted by Congress in 1986 to provide the private market with an incentive to invest in affordable rental housing. Federal housing tax credits are awarded to developers of qualified projects. Developers then sell these credits to investors to raise capital (or equity) for their projects, which reduces the debt that the developer would otherwise have to borrow. . . . Provided the property maintains compliance with the program requirements, investors receive a dollar-for-dollar credit against their Federal tax liability each year

3

over a period of ten years.

U.S. Dep't of Housing and Urban Development, HOME and Low Income Housing Tax Credits (LIHTC), http://www.hud.gov/offices/cpd/affordablehousing/training/lihtc/basics/work.cfm.   The low-income housing tax credit ["LIHTC"] program is "highly targeted" and is intended to be "available only for units which actually serve very low-income families . . . ." 132 Cong. Rec. S 8146 (daily ed. June 23, 1986).  Thus, as the parties stipulate, the IRS interprets the LIHTC statutes  as prohibiting full-time students who do not meet the exceptions found in 26 U.S.C. § 42(i)(3)(D) from residing in LIHTC properties[1].

Tax legislation granting tax exemptions, tax deductions, or tax credits is presumptively constitutional.  *See Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 547-48 (1983) (rejecting nonprofit organization's claims of free-speech and equal-protection rights to receive tax-deductible contributions to support its lobbying activity).

Generally, statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose.  Statutes are subjected to a higher level of scrutiny if they interfere with the exercise of a fundamental right, such as freedom of speech, or employ a suspect classification, such as race.  Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes. More than forty

---

[1]  Section 42(i)(3)(D) provides:

(D) Certain students not to disqualify unit.--A unit shall not fail to be treated as a low-income unit merely because it is occupied--
    (i) by an individual who is--
        (I) a student and receiving assistance under title IV of the Social Security Act, or
        (II) enrolled in a job training program receiving assistance under the Job Training Partnership Act or under other similar Federal, State, or local laws, or
    (ii) entirely by full-time students if such students are--
        (I) single parents and their children and such parents and children are not dependents (as defined in section 152, determined without regard to subsections (b)(1), (b)(2), and (d)(1)(B) thereof) of another individual, or
        (II) married and file a joint return.

years ago we addressed these comments to an equal protection challenge to tax legislation:

> "The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. . . . [T]he passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Madden v. Kentucky*, 309 U.S. 83, 87-88, 60 S.Ct. 406, 407-408, 84 L.Ed. 590 (1940) (footnotes omitted).

*Id.* at 547-48 (citation omitted). Federal income tax "appropriations are comparable to tax exemptions and deductions, which are also a matter of grace that Congress can, of course, disallow as it chooses." *Id.* at 549 (internal quotation marks, brackets, and ellipsis omitted).

## III.   Analysis.

Mr. Collier challenges the constitutionality of the LIHTC statute, contending that it illegally interferes with his allegedly fundamental constitutional right to pursue a higher education by effectively barring him from residing in LIHTC housing while he is a full-time university student while allowing qualified part-time and full-time students to remain in LIHTC housing. But Mr. Collier's predicate assumption – that he has a constitutionally-protected fundamental right to pursue higher education full time while occupying low-income housing – is erroneous. The Supreme Court has long held that "[e]ducation, of course, is not among the rights afforded explicit protection under our

Federal Constitution.  Nor do we find any basis for saying it is implicitly so protected. As we have said, the undisputed importance of education will not alone cause this Court to depart from the usual standard for reviewing . . . economic legislation." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973).

Nor does the Constitution provide for a right of access to a particular quality or type of housing. *See Lindsey v. Normet*, 405 U.S. 56, 74 (1972).  In *Lindsey*, the Supreme Court stated,

> [w]e are unable to perceive in [the Constitution] any constitutional guarantee of access to dwellings of a particular quality, or any recognition of the right of a tenant to occupy the real property of his landlord . . . contrary to the terms of the relevant agreement.  Absent constitutional mandate, the assurance of adequate housing and the definition of landlord-tenant relationships are legislative, not judicial, functions.

*Id.*  Because there is no fundamental or constitutional right to higher education or to a particular quality of housing, the Court reviews the constitutionality of the LIHTC statute to determine whether it bears a "rational relation to a legitimate governmental purpose." *Regan*, 461 U.S. at 547.  Clearly, Congress' decision to assist truly low-income citizens in obtaining affordable housing serves a legitimate governmental purpose, and attaining that goal through creating tax-credit legislation that limits the definition of qualified LIHTC-housing occupants is rationally related to that goal.  Mr. Collier has failed to demonstrate that the tax-credit legislation results in "hostile and oppressive discrimination against [protected] persons and classes." *See id*. at 548.  Mr. Collier's personal opinion that limiting LIHTC housing to only those full-time students who qualify under § 42(i)(3)(D)'s exceptions does not effectively promote the general welfare of the nation does not make irrational Congress's opinion that only those exceptions are warranted in achieving its goal to limit the benefit to truly low-income individuals.  In short, Mr. Collier has not shown that the LIHTC statute, including § 42(i)(3)(D), is unconstitutional.

6

Further, it is undisputed that Mr. Collier signed his lease agreement with the full knowledge that the agreement would be terminated, and he would be evicted, if he chose to become a full-time student without meeting any of the § 42(i)(3)(D) exceptions, thereby becoming disqualified from occupying LIHTC housing. Mr. Collier has failed to demonstrate any constitutional mandate that would trump the contract he signed giving TRK the right to evict an unqualified occupant in order to maintain its tax credits. *See Lindsey*, 405 U.S. at 74.

Because Mr. Collier has no constitutionally-protected right to pursue higher education in a full-time capacity while occupying LIHTC housing, the Court also rejects his argument that he was not provided adequate substantive or procedural due process. Mr. Collier was given written notice of his duty to maintain his eligibility to occupy LIHTC housing; he was given pre-eviction notice that his voluntary change in student status would result in eviction, and he was given a full opportunity to be heard in the state courts before he was evicted. Mr. Collier received all the procedural process he was due and he can not allege a substantive-due-process violation.

Finally, the Court rejects Mr. Collier's bald contention that § 42(i)(3)(D)(ii) violates the Fair Housing Acts' ("FHA") prohibition against housing discrimination on the basis of familial status. *See* 42 U.S.C. § 3604. "Familial status" is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with--(1) a parent or another person having legal custody of such individual or individuals; or (2) the designee [of that parent or legal guardian]." 42 U.S.C. § 3602(k)(1). Section 3604 of the FHA "thus operates to prohibit landlords from refusing to rent to (or from evicting) a person because that person has children living with them." *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265 (11th Cir. 2002). The FHA does not protect any other familial status from discrimination. Section 42(i)(3)(D)(ii) specifically allows full-time students who have children

7

residing with them, and who are not the dependents of another individual, to occupy LIHTC units.

Mr. Collier's assertion that § 42(i)(3)(D)(ii) violates the FHA is frivolous.

**IT IS, THEREFORE, ORDERED** that the United States' motion for summary judgment

[Doc. 26] is GRANTED and that Mr. Collier's motion for summary judgment [Doc. 27] is DENIED.

William P. Johnson
United States District Judge